1

2

3

4      **IN THE UNITED STATES DISTRICT COURT**

5      **FOR THE EASTERN DISTRICT OF CALIFORNIA**

6

7   MICHELLE WILLIAMS,                          CASE NO. 1:05-cv-0717 AWI TAG

8                    Plaintiff,                 FINDINGS  AND RECOMMENDATIONS
                                                ON PLAINTIFF'S APPEAL FROM
9       vs.                                     ADMINISTRATIVE DECISION

10  MICHAEL J. ASTRUE,[1]
    Commissioner of Social Security,
11
                     Defendant.
12  _____/

13
            Plaintiff Michelle Williams ("Claimant") seeks judicial review of an administrative decision
14
    denying her claim for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act
15
    (the "Act"), 42 U.S.C. § 1381 et seq.  (Doc. 1).  Pending before the Court is Claimant's appeal from the
16
    administrative decision of the Commissioner of Social Security ("Commissioner").   Claimant filed her
17
    complaint on June 2, 2005 (Doc. 1), and her opening brief on January 9, 2006.[2]  (Doc. 12).  The
18
    Commissioner filed his opposing brief on February 13, 2006.  (Doc. 13).  Claimant filed her reply brief
19
    on February 28, 2006.  (Doc. 14).
20
                                          **JURISDICTION**
21
            On June 30, 2003, Claimant's June 8, 2003, application for SSI benefits, was filed.
22
    (Administrative Record ("AR") 83-86).   Claimant's application was denied initially and on
23
    reconsideration.  (AR 61-64, 65-69).  After timely requesting a hearing, Claimant and her counsel
24

25          [1]  Michael J. Astrue is substituted for his predecessor, Jo Anne B. Barnhart, as Commissioner of the Social
    Security Administration. 42 U.S.C. § 405(g); Fed. R. Civ. P. 25(d)(1).
26
            [2]  Claimant refers to her opening brief as a motion for summary judgment, and her reply to the Commissioner's
27  opposing brief as a response to the defendant's cross-motion.  (Docs. 12, 14).  Although briefs filed in Social Security
    cases previously were summary judgment motions, for several years this Court has entitled the documents "opening
28  briefs," "responses" or "oppositions," and, "reply briefs."  These findings and recommendations continue this trend.

                                              1

appeared before Administrative Law Judge ("ALJ") James P. Berry on November 29, 2004. (AR 27-50, 70). On February 17, 2005, the ALJ issued a written decision finding that Claimant was not disabled for purposes of SSI. (AR 11-20). The Appeals Council denied Claimant's request for review on April 8, 2005. (AR 5-7). The Appeals Council's decision, therefore, became the final decision of the Commissioner, which is appealable to the district court. 42 U.S.C. § 405(g). The initiation of an appeal in the district court must be commenced within sixty (60) days of the Appeal Council's decision. Id. On June 2, 2005, Claimant timely filed this action. (Doc. 1).

## STATEMENT OF FACTS

The facts have been presented in the administrative hearing transcripts, the ALJ's decision, and the briefs filed by Claimant and the Commissioner, and, therefore, will only be summarized here. In her SSI paperwork, Claimant alleged an inability to work due to circulation problems, heart irregularities, diabetes, chronic pain, and congestive heart failure. (AR 89). Claimant also mentioned that she had been treated several times for breathing problems. (AR 91-92).

At the administrative hearing, Claimant, represented by counsel, testified that she was born on June 24, 1965, making her 39 years old at the time of ALJ Berry's decision, and had completed the ninth grade of school. (AR 11-20, 31). She added that she is six feet tall and weighs approximately 280 pounds, which is close to her normal weight. (AR 32). Claimant further testified that, because of her medical problems, she never worked. (AR 32-33). In response to her attorney's question, Claimant stated that her medical problems include (1) heart problems, (2) difficulty breathing, (3) lack of cartilage in her knees, which requires that she wears braces, (4) pain in her hip, back, and left shoulder, for which she has not sought treatment, (5) high blood pressure, (6) diabetes, (7) sleep apnea, (8) a tumor on her foot, (9) post-surgical intestinal problems,[3] (10) severe scar (keloid) pain where the incision was made for her heart surgery, and (11) frequent fatigue. (AR 33-36). Claimant rated her chronic, daily pain as a 9 on a scale of 1-to-10. (AR 37). According to Claimant, she recently was referred to a GI doctor, a pain specialist, and a plastic surgeon for her pain and intestinal problems. (AR 40, 43). She acknowledged that she took multiple medications, which she initially testified did not cause her any side

---

[3] Claimant testified that, in August 2004, she underwent heart surgery to place a valve or ring on her heart. She was not certain what procedures were performed. (AR 35).

1    effects. (AR 37-38). The ALJ refused to accept Claimant's attempt to claim that the medication made

2    her sleepy and dizzy after her attorney asked her a leading question to that effect. (AR 38). Claimant

3    admitted that she had abused non-prescription drugs, but only in an attempt to alleviate her hip pain, and

4    had stopped taking the drugs, drinking, and smoking approximately six months before the hearing.

5    (AR 46).

6        Regarding her daily activities and physical abilities, Claimant testified that she lays downs with

7    her legs elevated as often as possible. (AR 38). According to Claimant, her normal day consisted of

8    sitting on the couch and watching television shows. (AR 39). Claimant reported that she occasionally

9    would wash a few dishes, cook, see a movie, although it was difficult for her to sit until the end of the

10   show; and walk around the [apartment] complex for exercise. (AR 39-40, 46). She further testified that

11   she was not always able to dress herself or care for her personal hygiene; that she had problems bending

12   over; and that she had trouble walking because her feet became numb. (AR 40). Claimant added that

13   she did not grocery shop or engage in any hobbies or spots. (AR 40, 46). Claimant acknowledged that

14   she had no problems using her hands and grabbing items  (AR 40). When asked what her maximum

15   physical capabilities were in an eight-hour day, Claimant stated that she could sit and stand for

16   approximately thirty minutes; walk one-to-two blocks; and lift and carry less than five pounds.

17   (AR 44-45).

18       Vocational expert Kenneth Ferra ("VE") then testified regarding whether there were jobs in the

19   national and regional economy that an individual with the limitations that the ALJ posed could perform.

20   (AR 46-49). ALJ Berry's first hypothetical question presented a 39-year-old person with a 9th grade

21   education; no previous work experience; and the residual functional capacity ("RFC") to:  lift and/or

22   carry ten pounds frequently and twenty pounds occasionally; stand, walk, and/or sit six hours in an eight

23   hour day; occasionally climb, stoop, kneel, crouch, and crawl; and must avoid exposure to any

24   pulmonary irritants. (AR 47). The VE testified that this individual could work as, for example, a

25   cashier, greeter, or assembler. (AR 47-48). The second  hypothetical  involved the same person, but

26   whose RFC limited her to lifting and/or carrying less than five pounds, and standing, walking, and sitting

27   no longer than two hours. (AR 48). VE Ferra testified that the there were no jobs in the national or

28   regional economy that this individual could perform. (AR 48).

# RELEVANT LEGAL FRAMEWORK

To qualify as disabled under Title XVI of the Act, an applicant for SSI benefits must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A).  The Act also provides that a claimant shall be determined to be under a disability only if his impairments are of such severity that he "is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other substantial gainful work which exists in the national economy." 42 U.S.C. § 1382c(a)(3)(B).

# STANDARD OF REVIEW

Congress has provided a limited scope of judicial review of a Commissioner's decision. See, 42 U.S.C. § 405(g).  A court must uphold the Commissioner's decision, made through an ALJ, when the determination is not based on legal error and is supported by substantial evidence.  See, Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985); Sanchez v. Secretary of Health & Human Services, 812 F.2d 509, 510 (9th Cir. 1987) (two consulting physicians found applicant could perform light work contrary to treating physician's findings).  "The [Commissioner's] determination that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence."  Delgado v. Heckler, 722 F.2d 570, 572 (9th Cir. 1983) (citing 42 U.S.C. § 405(g)).  Substantial evidence is more than a mere scintilla, Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975), but less than a preponderance.  McAllister v. Sullivan, 888 F.2d 599, 601-602 (9th Cir. 1989); Desrosiers v. Secretary of Health and Human Services, 846 F.2d 573, 576 (9th Cir. 1988).  Substantial evidence "means such evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971) (citations omitted).  "[S]uch inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" will also be upheld.  Mark v. Celebrezze, 348 F.2d 289, 293 (9th Cir. 1965).  On review, the court considers the record as a whole, not just the evidence supporting the decision of the Commissioner.  Weetman v. Sullivan, 877 F.2d 20, 22 (9th Cir. 1989) (quoting Kornock v. Harris, 648 F.2d 525, 526 (9th Cir. 1980)).

///

4

1   It is the role of the trier of fact, not this court, to resolve conflicts in evidence.  <u>Richardson</u>, 402

2   U.S. at 400.  If evidence supports more than one rational interpretation, the court must uphold the

3   decision of the ALJ.  <u>Allen v. Heckler</u>, 749 F.2d 577, 579 (9th Cir. 1984).  Moreover, if there is

4   substantial evidence to support the administrative findings, or if there is conflicting evidence that will

5   support a finding of either disability or nondisability, the finding of the Commissioner is conclusive.

6   <u>Sprague v. Bowen</u>, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).  Nevertheless, a decision supported by

7   substantial evidence will still be set aside if the proper legal standards were not applied in weighing the

8   evidence and making the decision.  <u>Brawner v. Secretary of Health and Human Services</u>, 839 F.2d 432,

9   433 (9th Cir. 1987).

10   **SEQUENTIAL EVALUATION PROCESS**

11   The Commissioner has established a five-step sequential evaluation process for determining

12   whether a person is disabled under Title XVI of the Act.  20 C.F.R. § 416.920.  Step one determines if

13   she is engaged in substantial gainful activities.  If she is, benefits are denied. 20 C.F.R.

14   § 416.920(a)(4)(I), (b).  If she is not, the decision maker proceeds to step two, which determines whether

15   the claimant has a medically severe impairment or combination of impairments that meet the duration

16   requirements set forth in 20 C.F.R. § 416.909; i.e. the impairment(s) are expected to result in death or

17   continuously lasted or be expected to last at least twelve months.  20 C.F.R. § 416.920a(4)(ii), (c).  If

18   the claimant does not have a severe impairment, a combination of impairments, or meet the duration

19   requirement, the disability claim is denied. <u>Id.</u>

20   If the impairment is severe, the evaluation proceeds to the third step, which compares the

21   claimant's impairment with a number of listed impairments acknowledged by the Commissioner to be

22   so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 416.920(a)(4)(iii), (d);  20 C.F.R. Pt.

23   404 Subpt. P App. 1.  If the impairment meets or equals one of the listed impairments and satisfies the

24   duration requirement, the claimant is conclusively presumed to be disabled.  20 C.F.R. §§ 416.909,

25   416.920(a)(4)(iii), (d).   If  the  impairment  is  not  one  conclusively  presumed  to  be  disabling,  the

26   evaluation proceeds to the fourth step, which determines whether the impairment prevents the claimant

27   from doing work performed in the past. If the claimant is able to perform her previous work, she is not

28   disabled. 20 C.F.R. §§ 416.920(a)(4)(iv), (e); 416.960(b).  If the claimant cannot perform this work, the

5

1  fifth and final step in the process determines whether she is able to perform other work in the national

2  economy in view of her age, education and work experience. 20 C.F.R. §§ 416.920(a)(4)(v), (f) and (g);

3  416.960(b) and (c).  See Bowen v. Yuckert, 482 U.S. 137 (1987).

4  The initial burden of proof rests upon a claimant to establish that she "is entitled to the benefits

5  claimed under the Act."  Rhinehart v. Finch, 438 F.2d 920, 921 (9th Cir. 1971) (citations omitted).  In

6  terms of the five step sequential evaluation process, the Ninth Circuit has held that "[t]he burden of proof

7  is on the claimant as to steps one to four," while at the same time noting that an ALJ's *affirmative duty*

8  to assist a claimant to develop the record . . . complicates the allocation of burdens" such that "the ALJ

9  shares the burden at each step." Tackett v. Apfel, 180 F.3d 1094, 1098 & n.3 (9th Cir. 1999) (italics in

10  original).  The initial burden is met once a claimant establishes that a physical or mental impairment

11  prevents her from engaging in her previous occupation.  The burden then shifts to the Commissioner to

12  show (1) that the claimant can perform other substantial gainful activity and (2) that a "significant

13  number of jobs exist in the national economy" which claimant can perform.  Kail v. Heckler, 722 F.2d

14  1496, 1498 (9th Cir. 1984).

15  **ALJ'S FINDINGS**

16  The ALJ did not make an explicit finding at step one, although, arguably, he implicitly found that

17  Claimant had not engaged in substantial gainful activity since her alleged onset date of May 1, 2003.[4]

18  (AR 14, 17, 19).  At step two, the ALJ determined that Claimant has the following severe impairments

19  under 20 C.F.R. § 416.920(b): "mitral valve replacement surgery; chest pain; asthma; and morbid

20  obesity."  (AR 16, 19).  The ALJ discussed in detail the medical report by consultant Tomas B. Rios,

21  M.D, an internist who examined Claimant in September 2003.  (AR 15).  He also addressed the records

22  of treating cardiologist Patrick T. Paw, M.D., noting that Dr. Paw stated that Claimant's surgery was

23  successful and she had no other heart problems, although she should continue seeing a cardiologist.  (AR

24  15).  At step three, the ALJ found that Claimant's impairments were not "'severe' enough to meet or

25  medically equal, either singly or in combination . . . one of the impairments listed in Appendix 1,

26

27  [4]  The ALJ may have decided not to make a step-one finding because Claimant had testified that she never held a job and, therefore, he deemed it obvious that she did not engage in substantial work during the relevant period. (AR 32-33).  Alternatively, his step-four conclusion that Claimant had no past relevant work could be construed as a step-one

28  finding that she had not engaged in substantial work.  (AR 14, 17, 19).

Subpart P, Regulations No. 4." (AR 16, 19). The ALJ then determined Claimant's RFC, and specifically found that her testimony concerning her limitations was not entirely credibly. (AR 16-17, 19). At step four, the ALJ determined that Claimant had no past relevant work as defined under 20 C.F.R. § 416.965. (AR 14, 17, 19). At step five, the ALJ noted that Claimant was a younger individual with a ninth grade education, with an RFC that would enable her to perform a significant range of light work, and, based on the testimony of a vocational expert, he concluded that Plaintiff was not disabled and, accordingly, not eligible for benefits under 20 CFR § 416.920(g). (AR 17-20).

## ISSUES

Claimant's Opening Brief raised the following issues for consideration:

### I. Whether the ALJ Improperly Assessed Claimant's Subjective Testimony.

#### A. The ALJ did not properly apply the law when he rejected Claimant's testimony.

1. The ALJ failed to consider Claimant's pre- and post-surgical limitations and records.

2. The ALJ erroneously concluded that Claimant failed to pursue referrals for her pain.

3. The ALJ erred in finding that there was a lack of objective evidence supporting Claimant's testimony.

This Court must uphold the Commissioner's determination that Claimant is not disabled if the Commissioner applied the proper legal standards and there is substantial evidence in the record as a whole to support the decision.

## DISCUSSION

Because all of Claimant's arguments allege that the ALJ failed properly to interpret and apply the applicable laws in discounting Claimant's subjective testimony and the supporting medical records, this section will not sever the intertwined issues, but, instead, will address them together to the extent possible.

Arguments

Claimant asserts that the ALJ ignored her testimony concerning the minimal physical and mental activities of daily life that she could engage in based on symptoms she suffered as a result of her ailments, including pain, fatigue, and shortness of breath, both before and, to a lesser extent, after her heart surgery. (Doc. 12, p. 4). Claimant contends that the ALJ failed to consider the medical records

that demonstrated that she had impairments that would cause the symptoms and limitations about which she testified, including, inter alia, her obesity. (Doc, 12, pp. 5, 7-8). In addition, the ALJ erroneously discounted Claimant's testimony concerning her keloid pain because she had not followed up on referrals to specialists that would help alleviate the underlying problem and the pain, without considering that the referrals were made within a few weeks of the administrative hearing and she was, in fact, in the process of making appointments. (Doc. 12, pp. 6-7). Claimant further avers that the ALJ's reliance on her post-surgical condition only to ascertain her eligibility for benefits, and his failure to consider her ailments and limitations from the alleged onset date of over one year earlier, constituted error. (Doc. 12, Finally, Claimant argues that, although she is not a "basket case," the standard is whether she is capable of working, not whether she can perform a few, limited activities. (Doc. 12, pp. 8-9).

A two step analysis applies at the administrative level when considering a claimant's subjective credibility. Smolen v. Chater, 80 F.3d 1273, 1281 (9th Cir. 1996). First, the claimant must produce objective medical evidence of an impairment and show that the impairment could reasonably be expected to produce some degree of symptom. Id. at 1281-82. Pursuant to SSR 96-7p, however, the ALJ may not disregard the claimant's pain testimony only because there is a lack of medical records evidencing an impairment that causes pain. SSR 96-7p; Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997). Nonetheless, if there is no evidence that the claimant is malingering, the ALJ can reject the claimant's testimony about the severity of his or her symptoms "only by offering specific, clear and convincing reasons for doing so." Smolen, 80 F.3d at 1281. This level of specificity is crucial because, in its absence, effective judicial review may not be possible. See Mersman v. Halter, 161 F. Supp. 2d 1078, 1086 (N.D. Cal. 2001) ("The lack of specific, clear, and convincing reasons why Plaintiff's testimony is not credible renders it impossible for [the] Court to determine whether the ALJ's conclusion is supported by substantial evidence"); SSR 96-7p (the ALJ's decision "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and reasons for that weight").

The Ninth Circuit has long held that, when a claimant testifies about disabling pain, but does not seek treatment for it or comply with prescribed treatment, the ALJ may find that the claimant's pain testimony is "unjustified or exaggerated." Orn v. Astrue, __ F.3d __, 2007 WL 2034287, *11 (9th Cir.

8

July 16, 2007).  This Court further notes that there are any number of clear and specific findings that the ALJ can make,  many of which are identified in SSR 96-7p.  Such findings include: (1) whether "the level or frequency of treatment is inconsistent with the level of complaints," SSR 96-7p (Medical Treatment History), (2) whether "the medical reports or records show that the individual is not following the treatment as prescribed and there are no good reasons for this failure," id., (3) the consistency of statements made by the claimant to physicians, to those deciding benefits under other programs (e.g., workers' compensation), and to the Social Security Administration itself, while recognizing that "[s]ymptoms may vary in their intensity, persistence, and functional effects, or may worsen or improve with time, and [that] this may explain why the individual does not always allege the same intensity, persistence, or functional effects of his or her symptoms."  Id.  Each of these and other potential findings are fact-specific, precisely the province of the ALJ.  Some other ALJ findings, as identified in reported cases, are illustrative and demonstrate the almost limitless ways in which ALJ's can draw credibility inferences from the facts at hand: (1) an ALJ found that claimant's testimony that her neck pain was so severe that she had to cut her long hair for relief was contradicted by the fact that her hair reached well below her shoulders at the administrative hearing, Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003), (2) the same ALJ found that claimant's testimony that she had never undergone physical therapy was contradicted by medical records indicating that she had, in fact, attempted such treatments, id., (3) an ALJ found that claimant's "'extremely poor work history'" and low "'propensity to work'" negatively affected her credibility regarding her assertion that her disability precluded work, Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir. 2002), (4) the same ALJ found that claimant had not been a reliable historian, "'presenting conflicting information about her drug and alcohol usage,'" id., (5) the same ALJ also found that claimant's efforts to impede accurate testing of her limitations argued strongly against her credibility, (6) an ALJ found that claimant had been uncooperative during consultative examinations, and illustrated that finding with a specific statement by a physician regarding claimant's "'poor effort,'" Tonapetyan v. Halter, 242 F.3d 1144, 1148 (9th Cir. 2001), (7) the same ALJ found that claimant tended to exaggerate, and illustrated that finding with a specific comment by a physician that claimant was deficient during cognitive testing but "'much better'" when giving reasons for her inability to work, id., (8) an ALJ found that claimant's pain assertions were inconsistent with the opinion of his own treating

physician, who was "'quite emphatic in his report about the lack of objective evidence to support claimant's complaints of pain and weakness,'" Orteza v. Shalala, 50 F.3d 748, 750 (9th Cir. 1995), (9) an ALJ found that claimant's limited and recent use of non-narcotic pain medications were inconsistent with her claim of extreme pain, Ruiz v. Apfel, 24 F. Supp. 2d 1045, 1048-1049 (C.D. Cal. 1998) and (10) the same ALJ found that claimant's conservative treatment regimen was inconsistent with her complaints of extreme pain, id. at 1049.  For a brief synopsis of some factors that can form a basis for ALJ credibility findings, see Light, 119 F.3d at 792 ("the ALJ may consider [claimant's] reputation for truthfulness, inconsistencies either in his testimony or between his testimony and his conduct, his daily activities, his work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains").

Moreover, SSR 02-01p, which is the Administration's most recent evaluation of obesity, discusses the diagnosis of obesity on the five-step sequential process and the potential that obesity may cause or affect other ailments, such as sleep apnea.  This ruling, however, is equivocal with respect to the effect of obesity on an individual's ability to function, noting that it may lead to other ailments and, accordingly, additional analysis is warranted in determining the RFC of an obese person.  SSR 02-01p. This ruling does not specifically address any painful or limiting effects of obesity, or the credibility of testimony related to same.  SSR 02-01p.

Here, the ALJ set forth a summary of Claimant's medical history from soon after her alleged onset date, May 1, 2003, through her post-surgical period.  (AR 15-17).  ALJ Berry noted specific, clear and convincing reasons - supported by substantial evidence in the record - for discounting Claimant's subjective complaints, and the supposed limitations that went with them.  (Id.).  These included the following:

(1)  Discrepancies between Claimant's allegations and the reports of treating and examining physicians.  Notwithstanding the level of pain alleged by Claimant, diagnostic tests and medical reports[5] based on physical examinations included in the record reveal that Claimant's heart surgery successfully

---

[5]  Because there is only one treating physician, cardiologist Patrick Paw M.D., who performed the mitral valve surgery and referred Claimant to specialists for her keloid pain, the ALJ placed a great deal of emphasis on the report of examining consultant, Tomas Rios , M.D., for Claimant's allegations of pain, asthma, etc.  (AR 15, 17),  Dr. Paw did not prepare an opinion or assessment.  (See generally AR).

1   cured her prior, mis-diagnosed cardiac problems (AR 156-219); the joint-related pain was not supported

2   by clinical findings; and the ailments that she alleged she suffered in her initial SSI application were

3   minimal, that is, her asthma and hypertension reacted well to medication and her diabetes was at a

4   minimal stage.  (AR 15, 137-44).

5        (2)  Claimant's testimony testified that she could engage in quite a few daily activities, and her

6   alleged limitations appeared to be the result of her "deconditioned" state as opposed to any impairments.

7   (AR 16-17).

8        (3)  Claimant's reliance on mild medications to alleviate her pain, and her failure to comply with

9   Dr. Paw's referrals to pain specialists and a plastic surgeon.  (AR 16-17).  There was no indication,

10  however, that Claimant had called the specialists or pursued more aggressive or alternative pain-relief

11  modalities.  (See generally AR); See Smolen, 80 F.3d at 1284 (in determining the credibility of the

12  claimant, one consideration is his "unexplained or inadequately explained failure to seek treatment");

13  Ruiz v. Apfel, 24 F. Supp. 2d at 1049 (ALJ properly found that claimant's conservative treatment

14  regimen was inconsistent with complaints of extreme pain).

15       In light of the foregoing, the undersigned finds that ALJ Berry articulated clear grounds for his

16  decision to discredit Claimant's subjective complaints, and that these grounds were supported by

17  substantial evidence in the record.  See Light, 119 F.3d at 792 ("the ALJ may consider [claimant's]

18  reputation for truthfulness, inconsistencies either in his testimony or between his testimony and his

19  conduct, his daily activities, his work record, and testimony from physicians and third parties concerning

20  the nature, severity, and effect of the symptoms of which he complains"); Brawner v. Sec'y of Health

21  and Human Servs., 839 F.2d 432, 433 (9th Cir. 1987) (upon giving "great weight to [the] ALJ's

22  credibility assessment," the court concluded that it was supported by substantial evidence).]

23              **CONCLUSION AND RECOMMENDATIONS**

24       For the reasons discussed above, this Court finds no error in the ALJ's analysis and that the ALJ

25  properly concluded Claimant is not disabled.  This Court further finds the ALJ's decision is supported

26  by substantial evidence in the record as a whole and based on proper legal standards.  Accordingly, this

27  Court RECOMMENDS:

28  ///

11

1     1.     That Claimant's Social Security complaint be DENIED; and

2     2.     That judgment be ENTERED for Defendant Michael J. Astrue and against Claimant

3 Michelle Williams.

4     These Findings and Recommendations are submitted to the United States District Judge assigned

5 to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 72-304.  No later than

6 ten (10) court days after service of these Findings and Recommendations, any party may file written

7 objections to these Findings and Recommendations with the Court and serve a copy on all parties and

8 the Magistrate Judge and otherwise in compliance with this Court's Local Rule 72-304(b).  Such a

9 document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."

10 Responses to objections shall be filed and served no later than ten (10) court days after service of the

11 objections and otherwise in compliance with this Court's Local Rule 72-304(d).  A copy of the responses

12 shall be served on the Magistrate Judge.   The District Judge will review the Findings and

13 Recommendations, pursuant to 28 U.S.C. § 636(b)(1)(C).  The parties are advised that failure to file

14 objections within the specified time may waive the right to appeal the District Judge's order.  Martinez

15 v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

16

17 IT IS SO ORDERED.

18 Dated:   **August 7, 2007**                              **/s/ Theresa A. Goldner**
                                                            UNITED STATES MAGISTRATE JUDGE
19

20

21

22

23

24

25

26

27

28